[Crim. No. 1399. First Appellate District, Division Two.—June 27, 1927.]

THE PEOPLE, Respondent v. ALEXANDER RAY BENNING, Appellant.

Harry A. Houser, John T. Lewis and Wm. R. Biaggi for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

NOURSE, J.—The defendant was tried on an information charging the crime of murder and was found guilty of manslaughter. From the judgment following the verdict

and from the order refusing a new trial the defendant has appealed on a typewritten record.

The facts of the case, briefly stated, are that the defendant shot and killed one John Bena in the city of San Jose on the sixteenth day of August, 1926, at about 6 P. M. Ill feeling had arisen between the defendant and the deceased growing out of information coming to the defendant of improper relations between the deceased and the defendant's wife. Some time prior to the killing the defendant had warned the deceased to cease his attentions to his wife, but a short time thereafter the defendant's wife informed him that the association still continued. On a number of occasions immediately prior to the killing friends and neighbors had informed the defendant concerning these relations. This information, it is claimed, influenced the defendant to seek out the deceased in order to give him additional warnings, and as the defendant started out upon this mission he procured from one of his friends a loaded revolver, which he testified he took along merely for the purpose of scaring the deceased and to protect himself in the event the deceased and his associates made an attack upon him. The defendant found the deceased in a pool-hall, but not wishing to approach him in company with his associates he, the defendant, waited in his automobile on the other side of the street directly in front of the entrance of the pool-hall until the deceased came out. As the deceased started to walk down the street the defendant moved his car to the other side of the street and engaged the deceased in conversation. The only testimony as to what occurred at that time comes from the lips of the defendant. This testimony is that the defendant accused the deceased of having improper relations with his wife and insisted that he come down with him to the home of one Orlo King, a friend of the defendant, in order that he may make proof of his assertions; that he informed the deceased that defendant's wife had made a complete confession to him of these relations; that the deceased refused to go with him to King's, whereupon the defendant told him that he had a gun in his car, which he displayed to the deceased. It is then in the testimony that the defendant thought the deceased made a motion with his right hand to draw a gun from his hip pocket, whereupon the

defendant immediately shot the deceased through the right breast, from which he died some twenty-four hours thereafter without having made any statement as to the circumstances of the shooting. In a confession made on the night of the shooting the defendant stated that he told the deceased: " . . . We will go to King's and they will back it up; then I am going to beat you up."

The entire case of the defendant before the jury was one of self-defense and was based on his testimony that a motion was made by the deceased to draw a weapon, from which the defendant thought his life was in danger. Two witnesses were offered by the prosecution, who were passing the automobile immediately prior to the shooting and who testified that they did not see the deceased make any motion indicating an intention to draw a gun, but that as they passed the car the deceased had both hands on the door of the automobile.

The defendant argues that the evidence is insufficient to support the verdict. The point is that as no direct testimony was offered to disprove appellant's testimony that the deceased made a motion indicating an intention to draw a gun the jury was bound to accept appellant's claim that he felt he was in imminent danger and shot the deceased in self-defense. *People* v. *Estrada,* 60 Cal. App. 477 [213 Pac. 67], is cited in support of the argument. In that case the court reversed a judgment of manslaughter on the ground that all the evidence tended to show a justification for the killing and that there were no conflicting circumstances. The case differs from the facts in evidence here because in the Estrada case the evidence showed that the deceased was the aggressor and struck the first blow; that the defendant was not armed and did not anticipate a quarrel with the deceased; but that, after resisting the assault of the deceased, he struck the fatal blow with a weapon which he took from the deceased.

Thus all the circumstances in evidence coincided with the defendant's direct testimony that he felt himself in imminent danger and struck the fatal blow in defense of his own life. Here the circumstances are that the defendant purposely sought out the deceased for the purpose of picking a quarrel and was the aggressor throughout the controversy; that the deceased was not armed and did not

anticipate a quarrel with the defendant; that the deceased was standing beside the automobile in which the defendant was sitting and had both hands resting upon the door of the machine with his head and shoulders protruding inside the car; and that the range of the bullet showed that the fatal shot was fired while the deceased was standing in this stooping position with both shoulders on a line with the door of the automobile. From these circumstances the jury could well have drawn the inference that whatever motion the deceased made with his right hand it was not one for the purpose of drawing a weapon, but that if he had intended to draw a weapon he would have thrown his right shoulder back and at the same time withdrawn his head and shoulders from the inside of the car. There was the additional circumstance that the deceased made no effort to seize the gun in the defendant's hand and that the defendant made no effort to prevent the deceased from attacking him, but shot without warning. These circumstances, balanced against the direct testimony of the defendant that he *thought* the deceased was about to draw a weapon and that he fired in self-defense, were sufficient to justify the jury in finding that the defendant was not in imminent real or apparent danger at the time he fired the fatal shot and that the plea of self-defense was not proved. ■ The general rule is that the jury may disregard the testimony of the defendant when other circumstances warrant it and we have found no authorities holding that the uncontradicted statement of a defendant made in his own defense must always be accepted as proof of the facts leading up to the commission of the crime. To so hold would mean that circumstantial evidence must always give way to the direct testimony of the defendant, who, in cases like this, would be the only eye-witness to the actual commission of the crime.

■ Complaint is made of the conduct of the district attorney in his opening statement to the jury when he offered to prove that the defendant had threatened to get the deceased and that, at the time of the shooting, the deceased was making no demonstration against the defendant. It was said that the district attorney knew that these facts could not be proved and that his statement was prejudicial to the defendant. Evidence was given to show that shortly

before the shooting the defendant had made threats that he was going out to look for the deceased and that he was going to beat him up. The prosecution attempted to show through the testimony of two witnesses that the deceased made no motion to draw a gun. The testimony of these witnesses was merely that they saw no such motion, and, though on cross-examination both were shown to have been in such a position at the time of the shooting that they could not have seen the deceased, there was no error in offering this testimony and, of course, no error in stating that such showing would be made.

■ Complaint is made as to numerous rulings on the admission and rejection of testimony during the course of the trial. No reasons are given in the brief why the rulings were wrong and no authorities are cited. For this reason it is not necessary to consider the assignments here. (*People* v. *McLean*, 135 Cal. 306 [67 Pac. 770].)

■ Criticism is made of some of the instructions given by the trial judge. After instructing the jury fully on the issue of self-defense the trial judge warned the jurors to consider whether, under the circumstances of this case, a reasonable man would have covered the deceased with his gun, but not have fired the fatal shot. It is said that this is a comment on the evidence and objectionable for that reason. We cannot see it in that light.

■ Other instructions relating to malice and justification for the shooting if done in the heat of passion are also complained of. These instructions were given because the defendant was on trial on a charge of murder, and inasmuch as the verdict was manslaughter we cannot see how the defendant has in any way been prejudiced by these instructions.

We have examined the entire record and find that the defendant was fairly tried and convicted.

Judgment and order affirmed.

Koford, P. J., and Sturtevant, J., concurred.